# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT L. SHULER and PAULINE SHULER LEWIS, natural children and heirs at law of decedent, PAULINE SLOAN SHULER and THE ESTATE OF PAULINE SHULER, | ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | No. 12-2003-STA-dkv |
| FRANK A. McGREW, M.D.; H. EDWARD GARRETT, JR., M.D.; EVA G. PROCTOR, M.D.; JOHN DOE; CARDIOVASCULAR SURGERY CLINIC, PLLC; STERN OWNERSHIP GROUP, LLC d/b/a The Stern Cardiovascular Center; and BAPTIST MEMORIAL HEALTH CARE  CORPORATION, d/b/a Baptist Memorial Hospital-Memphis, | ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are Defendants' separately-filed Rule 12 Motions.  Specifically, Defendant Frank A. McGrew, M.D., and the Stern Cardiovascular Foundation, Inc. (incorrectly named as the Stern Ownership Group, LLC d/b/a The Stern Cardiovascular Center) filed a Rule 12(b)(6) and 12(e) Motion on March 23, 2012 (D.E. # 31).  Defendant Baptist Memorial Health Care Corporation and Baptist Memorial Hospital-Memphis filed a Motion to Dismiss on March 26, 2012 (D.E. # 33).  Defendants Edward Garrett, Jr., M.D.; Eva Proctor, M.D.; and Cardiovascular Surgery Clinic, PLLC filed a Motion for More Definite Statement (D.E. # 35)

1

and a Motion to Dismiss (D.E. # 38), both on April 3, 2012.  Plaintiffs have filed separate responses in opposition to all of Defendants' dispositive Motions, and Defendants have filed separate reply briefs.  For the reasons set forth below, Defendants' Motions are **GRANTED**.

## BACKGROUND

Plaintiffs have alleged the following in their Amended Complaint.  Plaintiffs' decedent Pauline Sloan Shuler (hereinafter "Ms. Shuler") passed away on June 23, 2011, while receiving treatment at the Intensive Care Unit ("ICU") at Baptist Memorial Hospital-Memphis ("Baptist"). (Compl. ¶ 12.)  Defendant Frank A. McGrew, M.D. ("Dr. McGrew") was Ms. Shuler's treating cardiologist for a number of years and had actual knowledge of her allergy to the blood thinner Heparin.  (*Id.* ¶ 13.)  Dr. McGrew had referred Ms. Shuler to a physician at the West Clinic in August 2006, where testing confirmed Ms. Shuler's allergy to the medication.  (*Id.*)  After she learned of her allergy to the drug, Ms. Shuler wore a medicine alert bracelet warning about the allergy and discussed the allergy during office visits, hospitalizations, and in telephone conversations with treating professionals.  (*Id.* ¶ 14.)  Ms. Shuler's Heparin allergy had been charted on her records at Baptist since June 18, 2007.  (*Id.* ¶ 15.)

On January 3, 2011, Ms. Shuler was admitted to Baptist for a heart catheterization procedure.  (*Id.* ¶ 16.)  Ms. Shuler's admission records for this hospitalization noted her Heparin allergy in several instances.  (*Id.*)  Despite actual knowledge of Ms. Shuler's Heparin allergy, Defendants and their employees attempted to administer Heparin or a Heparin derivative to Ms. Shuler on numerous occasions between January 3, 2011 and January 7, 2011.  (*Id.* ¶ 17.)  In each instance, Ms. Shuler questioned what she was being given and notified the individual that she was allergic to Heparin.  (*Id.*)  Plaintiffs allege on information and belief that Ms. Shuler was

given Heparin or a Heparin derivative on one or more occasions during that hospitalization. (*Id.* ¶18.)

Plaintiffs further allege that Ms. Shuler was given Heparin or a Heparin derivative during subsequent admissions to Baptist, including one occasion in very close proximity to her death at the Baptist ICU on June 23, 2011. (*Id.* ¶ 19.) Plaintiffs claim that the actions of Defendants and their employees in administering Heparin to Ms. Shuler during admissions between January 3, 2011, and June 23, 2011, were the proximate cause or a contributing proximate cause to her death. (*Id.*) Furthermore, Defendants left Ms. Shuler unattended for approximately forty-three minutes immediately preceding her death on June 23, 2011. (*Id.* ¶ 21.)

Based on these fact pleadings, Plaintiffs allege that Defendants are liable for medical battery upon Ms. Shuler. (*Id.* ¶ 22.) Defendant Stern Cardiovascular Clinic is vicariously liable for the acts and omissions of its employees including Dr. McGrew. (*Id.* ¶ 23.) Likewise, Defendant Cardiovascular Surgery Clinic, PLLC is vicariously liable for the acts and omissions of its employees including Defendant H. Edward Garrett, M.D., ("Dr. Garrett") and Eva Proctor, M.D. ("Dr. Proctor"). (*Id.* ¶ 24.) The Amended Complaint further alleges that Defendants' failure to observe Ms. Shuler and the act of leaving Ms. Shuler unattended for forty-three minutes constitute negligence per se or at the very least gross negligence. (*Id.* ¶ 25.) According to Plaintiffs, these acts and omissions were the proximate cause of injuries to Ms. Shuler, including the proximate cause or a contributing proximate cause of her death. (*Id.* ¶ 26.)

In their separate Rule 12 Motions, Defendants have raised one common, dispositive argument to seek dismissal of Plaintiffs' claims. All Defendants argue that Plaintiffs failed to comply with the pre-suit notice requirements of the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-121. According to Defendants, Tennessee law requires that a plaintiff

bringing a medical malpractice claim give each healthcare provider to be named as a defendant sixty (60) days notice before filing suit.   The statute sets out the elements required for the notice, including a HIPAA compliant medical authorization.   The statute further requires that the pleadings state that notice was given and attach documentation of the notice.   Defendants cite a number of cases applying Tennessee law where the complaint was dismissed for failure to provide pre-suit notice as the statute requires.   In particular, federal courts applying Tennessee law have concluded that the statutory pre-suit notice provision is substantive law, and thus it applies in diversity cases filed in federal court.   Here Plaintiffs failed to give pre-suit notice of their claim sounding in medical malpractice.   Therefore, Defendants argue that the Court should dismiss their Complaint.

In the alternative, Defendants contend that Plaintiffs failed to file a certificate of good faith as required by Tenn. Code Ann. § 29-26-122.   That statute provides that the Court must dismiss a complaint that fails to include a certificate of good faith.   Like the statute's pre-suit notice requirements, courts have construed the certificate of good faith requirement to be substantive law and applied it in federal diversity cases.   Plaintiffs' Complaint in this case does not include a certificate of good faith.   For these reasons Defendants assert that dismissal of Plaintiffs' Complaint is required.[1]

In their response briefs in opposition, Plaintiffs argue that the Medical Malpractice Act does not apply to their claims.   Plaintiffs emphasize that their claims sound in medical battery, *res ipsa loquitur*, negligence per se, wrongful death, and abuse and neglect of an elderly person.

---

[1] Defendants have raised various other arguments in their respective Motions, which would be dispositive of some or all of Plaintiffs' claims.  However, the Court holds that the statutory compliance issues are determinative in this case.  Therefore, the Court need not reach the other arguments briefed by the parties.

All of these theories are separate and distinct from a claim for medical malpractice. For example, Plaintiffs contend that unlike a claim for medical malpractice, expert proof is not required to make out any of these claims. Plaintiffs contrast their claim for medical battery with the similar theory of lack of informed consent, arguing that expert proof is not required to establish medical battery. Plaintiffs also indicate in a footnote that they have prepared and circulated to Defendants a second amended complaint, which contains even more fact pleadings in support of their negligence and medical battery claims. To date, Plaintiffs have not filed a motion for leave to amend their pleadings.

Defendants have filed separate replies. Defendants essentially contend that the gravamen of Plaintiffs' Complaint is medical malpractice. Plaintiffs' claims derive from the administration of medication and medical monitoring in the ICU by doctors and nurses. Plaintiffs' claims involve the acts or omissions of health care providers; are based on medical art, science, training or expertise; and bear a substantial relationship to the rendition of medical treatment by a medical professional. Therefore, Defendants argue that Plaintiffs were required to comply with the statutory prerequisites before bringing this suit.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[2] However,

---

[2] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

legal conclusions or unwarranted factual inferences need not be accepted as true.[3]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[5]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

## ANALYSIS

The Court holds that Plaintiffs' claims are subject to dismissal for failure to comply with the statutory requirements of the Tennessee Medical Malpractice Act ("the Act").  The parties do not dispute that the substantive law of Tennessee applies in this diversity case.  As such, the Court is bound to apply the substantive law of Tennessee as if the action had been brought in

---

[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[4] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[5] Fed. R. Civ. P. 8(a)(2).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi,* 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[6] *Twombly*, 550 U.S. at 555, 570.

[7] *Iqbal,* 556 U.S. at 678.

Tennessee state court.[6]  Under the *Erie* doctrine, a federal court must apply the substantive law of a state as it has been determined by the highest court of the state.[7]  When the state's high court has not answered a particular question of law, the federal court must discern or predict how the state courts would respond if confronted with the same question.[8]  The federal court must ascertain from all available data what the law is and apply it.[9]  In the absence of any indication that the state's high court would adopt a rule contrary to the rule announced in an intermediate appellate court, a federal court is not free to ignore the announcement of a state appellate court on matters of state law.[10]  For these reasons, Tennessee law governs Plaintiffs' claims.

## I.  Medical Malpractice

The threshold issue presented is whether the Medical Malpractice Act controls Plaintiffs' claims against Defendants.  The Tennessee Supreme Court has recently explained that the labels attached to a cause of action by the parties are not conclusive for purposes of the Act.[11]  Rather, it is "the responsibility of the courts to ascertain the nature and substance of a claim."[12] In other words, "if, in fact, the factual basis for the claim sounds in medical malpractice," the

---

[6] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[7] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

[8] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*,740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

[9] *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601 (6th Cir. 1985).

[10] *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

[11] *Estate of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011).

[12] *Id.*

requirements of the Act apply even though the pleadings did not refer to the Act or use the term "medical malpractice."[13] The Tennessee Supreme Court concluded that the Act "applies only to those alleged acts that bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise."[14] Therefore, "[t]he crucial question . . . is whether the services performed by [Defendants] for [Plaintiff] bear a substantial relationship to the rendition of medical treatment."[15]

Applying these principles of Tennessee law, the Court holds that the Medical Malpractice Act governs Plaintiffs' claims. The factual allegations of Plaintiffs' Amended Complaint concern services performed by Defendants, which bear a substantial relationship to the rendition of medical treatment. The Amended Complaint alleges that Defendants administered Heparin or a derivative to Ms. Shuler on at least one occasion during a hospitalization in 2011. The Amended Complaint further alleges that while treating Ms. Shuler at the Baptist ICU, Defendants left her unattended for approximately forty-three minutes immediately prior to her death. The Court holds that the use of a drug prescribed by a physician in a hospital setting bears a substantial relationship to the rendition of medical treatment by a medical professional. Likewise, the failure to attend to a patient being treated in an ICU also bears a substantial relationship to the rendition of medical treatment. The Defendants whom Plaintiffs seek to hold

---

[13] *Id.*

[14] *Id.* ("If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory."). *See also Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003) ("[W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable.").

[15] *Gunter*, 121 S.W.3d at 639.

liable for Ms. Shuler's injuries are all medical professionals or organizations providing medical services. Defendants include the hospital where Plaintiff was being treated, three treating physicians, and two medical groups. Based on the facts alleged in the pleadings, the Court finds that the nature and substance of Plaintiffs' claims sound in medical malpractice. Therefore, the Court concludes that Plaintiffs' claims are actually claims for medical malpractice controlled by the Act.

## II. The Requirements of the Medical Malpractice Act

Having concluded that Plaintiffs' claims for the administration of Heparin to Ms. Shuler and for leaving Ms. Shuler unattended in the ICU sound in medical malpractice, the Court holds that Plaintiffs were required to comply with the statutory requirements of the Medical Malpractice Act. The statute requires that any person "asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice."[16] The notice must include the name and date of birth of the patient, the name and address of the claimant (if not the patient), the name and address of the attorney sending the notice, a list of the names and addresses of all providers receiving the notice, and a HIPAA compliant medical authorization.[17] The statute also requires that the judicial complaint affirmatively plead that the plaintiff has given the required notice and provide documentation of the notice.[18] Federal courts applying Tennessee law have held that the statutory notice

---

[16] Tenn. Code Ann. § 29-26-121(a).

[17] § 29-26-121(a)(2).

[18] § 29-26-121(b). This paragraph gives the court discretion to excuse failure to comply with the notice requirement "only for extraordinary cause shown." *Id.*

requirements are substantive in nature and therefore apply in diversity cases heard in federal court.[19]  In this case, Plaintiffs' Amended Complaint does not allege that Plaintiffs gave pre-suit notice to Defendants, nor do the pleadings include documentation of such notice.  Plaintiffs have not alleged or argued on brief any circumstance which would excuse the notice requirements. Under the circumstances the Court holds that the Amended Complaint fails to state a claim for medical malpractice.[20] Therefore, Defendants' Motions must be granted on this basis alone.

In the alternative, the Court holds that Plaintiffs have not complied with the statute's good faith requirements.  The Medical Malpractice Act requires that a plaintiff (or the attorney for the plaintiff) file a certificate of good faith with the complaint, stating that the plaintiff has consulted an expert about the malpractice claim and obtained a written statement from the expert opining that there exists a good faith basis for the claim.[21]  The statute provides that a court must dismiss the suit if the plaintiff does not file the certificate of good faith with the complaint.[22] The Amended Complaint in this case does not include a certificate of good faith or allege any facts to show why the statutory requirement should be excused.  As such, the Amended

---

[19] *Williams v. United States*, 754 F. Supp. 2d 942, 951-52 (W.D. Tenn. 2010) (Mays, J.) (collecting Tennessee cases, federal cases from other states in the Sixth Circuit, and federal cases from states outside of the Sixth Circuit construing similar notice requirements in medical malpractice statutes from other jurisdictions); *Conrad v. Wash. Cnty.*, No. 2:11-cv-106, 2012 WL 554462, at *2 (E.D. Tenn. Feb. 21, 2012); *Southwell v. Summit View of Farragut LLC,* No. 3:10-CV-550, 2011 WL 2749614, at *3 (E.D. Tenn. July 15, 2011); *Miller v. Monroe Cnty., Tenn.,* No. 3:09-CV-85, 2010 WL 1427298, at *4 (E.D. Tenn. Apr. 7, 2010).

[20] *Southwell*, 2011 WL 2749614, at *5; *Maliani v. Vanderbilt Univ. Med. Ctr.,* No. 3:10-0235, 2010 WL 4054268, at *4-7 (M.D. Tenn. Oct.12, 2010).

[21] Tenn. Code Ann. § 29-26-122(a)(1).

[22] § 29-26-122(a); *Maliani*, 2010 WL 4054268, at *5; *Miller*, 2010 WL 1427298, at *5; *Martins v. Williamson Med. Ctr.*, No. M2010-00258-COA-R3-CV, 2010 WL 4746238, at *3-4  (Tenn. Ct. App. Nov. 22, 2010).  An exception to mandatory dismissal arises if the plaintiff can demonstrate extraordinary cause or show that the medical provider failed to produce the plaintiff's records in a timely manner.  § 29-26-122(a).

Complaint fails to state a claim for medical malpractice. Therefore, Defendants' Motions are **GRANTED**.

## III.  Medical Battery

Plaintiffs argue that their claims related to the administration of Heparin to Ms. Shuler do not sound in negligence at all but instead are based on a medical battery theory.  Plaintiffs contend that Ms. Shuler never gave consent to the use of Heparin during her treatment and that Defendants "purposefully and willfully" gave her the drug despite the fact that she had a documented allergy to the medication.[23]   Under Tennessee law, "[p]erformance of an unauthorized procedure constitutes a medical battery."[24]   Medical battery typically occurs when "(1) a professional performs a procedure that the patient was unaware the doctor was going to perform; or (2) the procedure was performed in a part of the body other than that part explained to the patient (i.e., amputation of the wrong leg)."[25]   The Tennessee Court of Appeals has described medical battery as a "narrow area in which physicians may be held liable for battery in their treatment of patients."[26]   Nevertheless, the Tennessee Supreme Court has explained that the theories of battery and malpractice are not mutually exclusive.[27]   As such, "no election of

---

[23] Am. Compl. ¶ 18.

[24] *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998).

[25] *Ashe v. Radiation Oncology Assoc.,* 9 S.W.3d 119, 121 (Tenn. 1999).

[26] *Godbee v. Dimick*, 213 S.W.3d 865, 891 (Tenn. Ct. App. 2006) (citing *Woolley v. Henderson,* 418 A.2d 1123, 1133 (Me. 1980)).

[27] *Shadrick v. Coker*, 963 S.W.2d 726, 732-33 (Tenn. 1998).

remedies is generally required; if a battery exists, then malpractice may not necessarily be reached, but if no battery can be shown, then the issue clearly emerges as one of malpractice."[28]

While it is true that the same constellation of facts may give rise to claims for medical battery or medical malpractice, the Court concludes that Tennessee law does not provide a claim for medical battery under the facts presented in this case. As Plaintiffs correctly point out, one of the key issues in a medical battery case is whether the patient gave informed consent for the treatment or procedure. The Tennessee Supreme Court has adopted a two-part inquiry to determine whether a claim constitutes a medical battery: (1) whether the patient had prior knowledge that the doctor was going to perform the procedure; and, if so (2) whether the patient gave consent to authorize performance of the procedure.[29] Simply put, "[w]ithout consent, the treatment constitutes a battery."[30] The Tennessee Supreme Court, however, has not addressed what constitutes a "procedure" or "treatment" for purposes of a medical battery. Furthermore, the Tennessee Supreme Court has never addressed the specific issue presented, which is whether a medical provider must obtain a patient's informed consent for a single component in an ongoing course of medical treatment, for example, the administration of a drug during a hospitalization.

Although the Tennessee Supreme Court has not spoken to these issues, the Tennessee Court of Appeals has held that a patient's claim based on "the injurious consequence of a therapeutic drug treatment" is one for medical malpractice, and not battery.[31] In *Cary v.*

---

[28] *Id.* at 732 (quoting *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn. 1987)).

[29] *Blanchard*, 975 S.W.2d at 524.

[30] *Shadrick*, 963 S.W.2d at 732 (quoting *Cardwell,* 724 S.W.2d at 751).

[31] *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989).

*Arrowsmith*, the patient had undergone an ophthalmological procedure to correct nearsightedness.[32] When the patient developed postoperative complications, his ophthalmologist prescribed phospholine iodide drops, a medication that posed a risk of retinal detachment.[33] The patient used the eye drops for some months, at first experiencing side effects such as headaches and dizziness and ultimately suffering a detached retina.[34] The patient brought suit against the ophthalmologist, alleging among other things that the doctor had failed to warn him about the possible side effects of the eye drops.[35]

On appeal, the patient argued that the trial court should have charged the jury on the issue of whether the patient had given his informed consent to be treated with the phospholine iodide drops.[36] The Court of Appeals explained that "[i]f informed consent is not effectively obtained, the defendant's departure from the standard care is not negligence but battery."[37] On the other hand, "if no battery can be shown, then the issue clearly emerges as one of malpractice."[38] The Court of Appeals concluded that the patient did not have a claim for battery or lack of informed consent and instead held that

> the better rule is that a treating physician must obtain the patient's informed consent for the medical treatment of the patient and not *for each component part*

---

[32] *Id.* at 11-12.

[33] *Id.* at 13.

[34] *Id.*

[35] *Id.* at 13-14.

[36] *Id.* at 21.

[37] *Id.* (quoting *Cardwell*, 724 S.W.2d at 750) (ellipsis omitted)).

[38] *Id.* (quoting *Cardwell*, 724 S.W.2d at 751).

*of the treatment process.* The patient has an adequate legal remedy, i.e., a malpractice action sounding in negligence, for the injurious consequence of therapeutic drug treatment.[39]

The Court of Appeals also cited with approval a decision from a Pennsylvania appellate court, holding that the "the doctrine of informed consent should continue to be limited in its applicability to only those cases involving surgical or operative medical procedures and not expanded to therapeutic treatment which is usually an on-going treatment upon examination by a treating physician."[40]  In a subsequent decision, the Tennessee Court of Appeals remarked that *Cary* "limit[ed] its ruling to cases where the treatment process at issue consists of multiple, distinct component parts."[41]

Based on this authority, the Court concludes that Plaintiffs do not have a claim under Tennessee law for medical battery under the facts of this case.  Plaintiffs allege that Defendants gave Ms. Shuler Heparin or a derivative of that drug on at least one occasion prior to her death. Defendants did this even though Ms. Shuler had an allergy to the drug and had not consented to being given the medication.  However, the Amended Complaint alleges that Ms. Shuler was given the medication as a component part of her treatment at Baptist.  The administration of Heparin cannot be said to be a "procedure" or "treatment" as the Tennessee Court of Appeals considered the terms in *Cary*.  Rather, the use of Heparin was a "component part of the treatment process" during Ms. Shuler's hospitalizations.  It follows that Defendants were not required under Tennessee law to obtain Ms. Shuler's informed consent for the use of Heparin so long as

---

[39] *Id.* (emphasis added).

[40] *Id.* (citing *Boyer v. Smith*, 497 A.2d 646, 649 (Pa. Super. Ct. 1985)).

[41] *Mitchell v. Ensor*, W2001-01683-COA-R3-CV, 2002 WL 31730908, at *8 (Tenn. Ct. App. Nov. 18, 2002).

Defendants had her informed consent to be treated at the hospital.  Under these facts, Plaintiffs'
"adequate legal remedy . . . for the injurious consequence of therapeutic drug treatment" is a
"malpractice action sounding in negligence."   Therefore, the Court finds Plaintiff's medical
battery theory to be unpersuasive.

## IV.  Plaintiffs' Alternative Theories

In addition to their claim for medical battery, Plaintiffs contend that their fact pleadings
also support claims of negligence per se, *res ipsa loquitur*, and abuse and neglect of an elderly
person.  Even so, the Court holds that these alternative theories do not alter the fact that
Plaintiffs' claims sound in medical malpractice and therefore are governed by the statutory
requirements of the Act.

First, the Court concludes that Plaintiffs' allegations of negligence or gross negligence
are essentially claims for medical malpractice.   The Amended Complaint alleges that
Defendants' failure to attend to Ms. Shuler during the forty-three minutes immediately preceding
her death constitutes negligence per se.[42]   Under Tennessee law, a party invoking the doctrine of
negligence per se may establish breach of duty by proving "the violation of a statute prescribing
a standard of conduct expected of a reasonable person."[43]   Furthermore, r*es ipsa loquitur* is a
kind of circumstantial evidence "that permits, but does not compel, a jury to infer negligence
from the circumstances of an injury."[44]   The Medical Malpractice Act lists the elements a

---

[42] Am. Compl. ¶ 25.  The Amended Complaint does not specifically plead *res ipsa loquitur* or "abuse and neglect of an elderly person."

[43] *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 937 (Tenn. 1994) (holding that a party may prove negligence per se by showing "that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public" and "that the injured party was within the class of persons that the statute was meant to protect").

[44] *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91-93 (Tenn. 1999).

plaintiff must show in order to make out a prima facie case under the Act.  Specifically, the statute places the burden on the plaintiff to prove "[t]hat the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with [the recognized] standard [of acceptable professional practice in the profession."[45]  The Tennessee Supreme Court has recently concluded that negligence per se can be asserted in medical malpractice cases only so long as the plaintiff relies on a theory of *res ipsa loquitur*, reasoning that negligence per se otherwise conflicts with the Act's bar on presumptions of negligence.[46]  The use of *res ipsa loquitur* in medical malpractice cases in Tennessee is "limited" to situations involving "unusual injuries" such as a surgeon leaving a surgical sponge in a patient's body after an operation.[47]

The Court has held that the acts of negligence alleged against Defendants in this case are governed by the Medical Malpractice Act, regardless of what evidentiary theory Plaintiffs might plead.  As previously discussed, whether the parties label a cause of action as one for medical malpractice or common law negligence, "the issue is whether the alleged negligent conduct 'bears a substantial relationship to the rendition of medical treatment by a medical professional.'"[48]  Thus, the fact that Plaintiffs describe their theories as negligence per se or *res*

---

[45] Tenn. Code Ann. § 29-26-115(a)(2).

[46] *French*, 333 S.W.3d at 561 (citations omitted); *see also* § 29–26–115(c) ("In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant.  Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.").

[47] *Seavers*, 9 S.W.3d at 92; *see also Harris v. Buckspan*, 984 S.W.2d 944, 953-54 (Tenn. Ct. App. 1998) ("There are only very, very few instances where a pleading of *res ipsa loquitur* is applicable in medical malpractice cases.") (quotation omitted).

[48] *Draper v. Westerfield,* 181 S.W.3d 283, 290 (Tenn. 2005) (citing *Gunter*, 121 S.W.3d at 641).

*ipsa loquitur* is not dispositive.  For the reasons already explained, the Court finds that the gravamen of Plaintiffs' Amended Complaint is medical malpractice.  This is not to say that Plaintiffs could not avail themselves of the doctrines of negligence per se or *res ipsa loquitur* in proving their medical malpractice claims.  The Tennessee Supreme Court has held that these doctrines are available in a "limited" number of "unusual" cases.  The fact remains that all of the acts alleged in the pleadings sounding in negligence relate to acts that "bear a substantial relationship to the rendition of medical treatment."[49]  Therefore, even accepting Plaintiffs' argument that their claims are based on negligence per se and *res ipsa loquitur*, Plaintiffs' allegations, nevertheless, sound in medical malpractice, and not common law negligence.  As a result, Plaintiffs must comply with the Medical Malpractice Act.

For similar reasons, Plaintiffs cannot rely on their passing mention of abuse and neglect of an elderly person to escape the requirements of the Medical Malpractice Act.[50]  The Tennessee Adult Protection Act, Tenn. Code Ann. § 71–6–101 *et seq.*, ("TAPA") provides a cause of action for "abuse or neglect" of an adult, defined as "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain that person's health or welfare."[51]  Even assuming the Amended Complaint has alleged a TAPA claim, the statute clearly states that it

---

[49] *Gunter*, 121 S.W.3d at 639.

[50] Plaintiffs use the phrase "abuse and neglect of an elderly person" in their briefing on Defendants' Rule 12 motions.  However, it is not at all clear to the Court that Plaintiffs have properly pleaded such a theory in their Amended Complaint.

[51] *Cannon v. McKendree Village, Inc.*, 295 S.W.3d 278, 283-84 (Tenn. Ct. App. 2008) (quoting Tenn. Code Ann. § 71-6-102(1)).

does not apply to claims for medical malpractice.[52]   Because the Court has construed the pleadings in this case to assert medical malpractice claims, TAPA has no application here, and the Medical Malpractice Act provides Plaintiffs' exclusive remedy.[53]

Having concluded that the Medical Malpractice Act and its requirements govern Plaintiffs' claims in this case, the Court concludes that Plaintiffs have failed to satisfy the statute's pre-suit notice provision or certificate of good faith requirement.  Therefore, Plaintiffs' claims are subject to dismissal.

## V.  Negligent Hiring and Retention

Finally, the Amended Complaint asserts in a single allegation that Defendants Baptist; Cardiovascular Surgery Clinic, PLLC; and Stern Cardiovascular Center ("the Defendant-employers") are liable for punitive damages for the negligent hiring and retention of their employees whose acts and omissions were allegedly the cause of Ms. Shuler's death.[54]   The Defendant-employers have moved to dismiss these claims, arguing that the Amended Complaint fails to state a plausible claim for negligent hiring and retention and that the Medical Malpractice Act controls these claims just like the others in this suit.  The Court agrees.

The Court holds that the Amended Complaint has failed to state a plausible claim for negligent hiring or retention.  Plaintiffs' pleadings fail to "contain either direct or inferential allegations with respect to all material elements of the claim."[55]   A plaintiff must prove the following elements in order to state a claim of  negligence: "(1) a duty of care owed by defendant

---

[52] Tenn. Code Ann § 71–6–120(g).

[53] *See Cannon*, 295 S.W.3d at 284.

[54] Am. Compl. ¶ 30.

[55] *Wittstock*, 330 F.3d at 902.

to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."[56]  "A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job."[57]  Here Plaintiffs have alleged no facts to support the inference that any medical professional involved in Ms. Shuler's care was unfit for the job.  The Amended Complaint simply alleges in conclusory fashion that the Defendant-employers negligently hired and retained the employees whose acts and omissions allegedly resulted in Ms. Shuler's death.  The Court finds that Plaintiffs' negligent hiring and retention claim is nothing more than a "threadbare" recital of the cause of action.[58]  For this reason alone, Plaintiffs have failed to state this claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In the alternative, the Court holds that the Medical Malpractice Act governs Plaintiffs' negligent hiring and retention claim and as previously explained that Plaintiffs have failed to comply with the statute's requirements.  Another member of this Court has recognized that in medical malpractice cases, claims for negligent hiring or retention might be separate and distinct from claims related to medical treatment, meaning that the requirements of the Medical

---

[56] *Giggers v. Memphis Hous. Auth.,* 277 S.W.3d 359, 364 (Tenn. 2009); *Freeman v. Wal-Mart Stores East, LP*, 781 F. Supp. 2d 661, 669 (E.D.Tenn. 2011) (citing *Giggers* in its analysis of a negligent hiring and retention claim).

[57] *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008); *Holt v. Macy's Retail Holdings, Inc.*, 719 F. Supp. 2d 903, 917 (W.D. Tenn. 2010).

[58] *See Stewart v. Deutsche Bank Nat'l Trust Co.*, No. 3:08-CV-475, 2010 WL 4004670, at *11 (E.D. Tenn. Oct. 12, 2010) (dismissing a negligent hiring and retention claim under Rule 12(b)(6)).

Malpractice Act may not apply to a claim for negligent hiring or retention.[59]  Here, Plaintiffs seek to hold the Defendant-employers liable for negligently hiring and retaining the alleged tortfeasors who provided Ms. Shuler's medical care.  In order to hold the Defendant-employers liable for their employees' conduct, Plaintiffs would still need to show that the employees did not satisfy the professional standard of care and that the Defendant-employers knew it.  In other words, the Defendant-employers would be liable only if it could first be shown that they had reason to know their employees did not possess the skill and expertise required in the profession and hired and retained the employees anyway.[60]  Arguably, then the claims for negligent hiring and retention in this case would "bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise."[61] Even if the Amended Complaint had plausibly stated these claims, the Court concludes that the Medical Malpractice Act governs Plaintiffs' negligent hiring and retention claims based on the conduct of the medical professionals in this case.  Therefore, the Defendant-employers' Motions are **GRANTED** as to this issue.

## VI.  Amending the Pleadings

---

[59] *Hill v. Sun Healthcare Grp., Inc.*, No. 08-1307-JDB, 2009 WL 2058809, at *5 (W.D. Tenn. July 8, 2009) (Breen, J.) ("Several of the allegations, such as negligent hiring and failure to supervise employees, plausibly could be either related or unrelated to medical treatment based upon the minimal information on the face of the complaint.").

[60] *Holt*, 719 F. Supp. 2d at 917; *Catholic Bishop for Diocese of Memphis*, 306 S.W.3d at 717.

[61] *French*, 333 S.W.3d at 557 ("If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory.").

As mentioned previously, Plaintiffs have stated in their briefs an intention to amend their pleadings in response to Defendants' Rule 12 motions.  Plaintiffs first indicated their plan to seek leave to amend the pleadings in a brief filed on April 20, 2012,[62] and last mentioned filing an amended pleading in a brief date May 1, 2012.[63]  To date, Plaintiffs have not filed a motion for leave to amend.[64]  Even if they had, it is not clear to the Court that the proposed amendment would save Plaintiffs' claims sounding in medical malpractice.  According to Plaintiffs, the proposed amendment responds to the "alternative" arguments raised in Defendants' Rule 12(e) motions[65] and therefore would "render moot many of the issues addressed in each Defendant's Motion for a More Definite Statement."[66]  There is no reason for the Court to conclude that the proposed amendment would cure Plaintiffs' failures to comply with the Medical Malpractice Act.  In fact, Plaintiffs continue to argue in their response briefs that their claims do not sound in medical malpractice at all.  Based on the record before the Court, Plaintiffs have not shown that amending their pleadings would alter the Court's conclusion that dismissal is warranted.

---

[62] Pls.' Resp. in Opp'n to Def. Dr. McGrew's Mot. to Dismiss (D.E. # 39).

[63] Pls.' Resp. in Opp'n to Def. Dr. Garrett's Mot. to Dismiss (D.E. # 42).

[64] The Court declines to consider Plaintiffs' reference to amending the pleadings as a motion for leave to do so.  The Sixth Circuit has held that a motion for leave to amend under Rule 15(a) is governed by Rule 7(b), which states that a motion "shall state with particularity the grounds for seeking the order."  *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) (citations omitted).  Where a party seeking leave to amend does so "without providing grounds or a proposed amended complaint to support" the request, the Sixth Circuit has held that the party fails to state the grounds for relief with particularity.  *Id.*  More specifically, "a bare request in an opposition to a motion to dismiss. . . without any indication of the particular grounds on which amendment is sought" is insufficient.  *Id.* (citing *Confederate Mem. Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

[65] *See* Pls.' Resp. in Opp'n  13 (D.E. # 39).

[66] *Id.* at 9, n.1.  Plaintiffs also state that the proposed amendment would remove Dr. McGrew and Dr. Garrett as named parties.  *Id.* at 13.

## CONCLUSION

The Court holds that Plaintiffs' claims "bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise."[67]  Although Plaintiffs were required to the comply with the Medical Malpractice Act, the Amended Complaint does not show that Plaintiffs gave Defendants proper notice of their claims prior to bringing suit or filed a certificate of good faith from an expert who had reviewed their claims.  The Court is not persuaded by Plaintiffs' theories that their causes of action are actually medical battery, negligence per se, *res ipsa loquitur*, and abuse or neglect of an elderly person.  Therefore, Defendants' separate Motions to Dismiss are **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 8, 2012.

---

[67] *French*, 333 S.W.3d at 557.